JULY 1829.

Tankersley
v.
Richardson.

## KING v. GREEN, *et al.*

1, The intermarriage of an administratrix, with an obligor in a bond payable to her as administratrix, does not extinguish the debt, but merely suspends the right of action during the coverture, and while she continues administratrix.
2. A bond made payable to an administrator as such, is assetts in the hands of an administrator *de bonis non.* The description will not be considered as mere *descriptio personæ.*
3. Where in open Court, it is consented that the papers shall be taken out by the Judge, and that a judgment be rendered in vacation, as of the preceding term. and judgment is so rendered, it is a sufficient and final judgment; at least it is sufficient to sustain a writ of error thereupon taken.

GEORGE C. KING, sheriff of Perry county, and administrator *de bonis non,* by virtue of his office, of John Bass, deceased, brought an action of debt in Perry Circuit Court, against Jetson Green, B. W. Holliday, and John Welsh, to recover of them the amount due on a sealed note made by them.

The declaration was in the detinet, and contained two counts. In the first count it was avered, that the defendants, Jetson Green, B. W. Holliday, and J. Welsh, on the 13th December, 1822, made and sealed a specialty, promising to pay twelve months after the date, to Julian Bass, administratrix, and to M. Holliman, administrator of John Bass, deceased, or their assigns, four hundred and forty-four dollars and forty-five cents, for value received; that Julian Bass was the administratrix, and M. Holliman the administrator of John Bass, who died intestate; that Julian Bass intermarried with Jetson Green, one of the obligors, who thereby became also an administrator in right of his wife Julian, and entitled to the administration jointly with Holliman; that afterwards, on the 6th of May, 1825, the letters of administration as to Julian and her husband, by the Orphan's Court of Perry county, were revoked, and were surrendered; and on the 20th of the same month, the letters of administration as to Holliman were also surrendered

to said Court; that afterwards the administration of said estate was committed by the said Orphan's Court to J. B. Nave, then sheriff of Perry county, and that the plaintiff, King, was at the commencement of the action, and still is the successor in office of Nave, as sheriff, &c. The second count was the same, with the exception that the intermarriage of Jetson Green with Julian was not mentioned, nor his administration, but Nave was alledged to have succeeded Julian Bass and M. Holliman in the administration, &c.

The defendants filed a general demurrer to the declaration. It appears by the record, that at November term, 1826, it was agreed by the counsel, that the cause should be argued at Bibb Circuit Court, and that the judgment should be entered on the decision of the Judge there, as of November term of Perry Court. On the 24th of November, Judge Gayle, who presided, returned the papers, with his decision thereon in writing, sustaining the demurrer, and rendering judgment for the defendants; which was recorded.

This judgment was by *King*, the plaintiff, here assigned for error.

BARTON and STEWART, for the plaintiff in error, argued, that the demurrer should have been overruled; that the marriage of Julian the administratrix, with Jetson Green, operated only as a suspension of the right of action during the coverture, and while her and her husband were entitled to the administration; but that the debt was not thereby extinguished; that the absolute rights of the parties were not affected by her marriage with an obligor; [a] that the bond was assets in the hands of the administrator *de bonis non;* [b] the names of the payees are not mere *decsriptio personæ;* [c] that the second count was clearly good; as no marriage there appears, it is free from any objection whatever; that the demurrer being general, to the whole declaration, and at least one count being good, it should have been overruled. [d]

H. G. PERRY, for the appellees, argued, that the demurrer was properly sustained; and in addition thereto, that the writ of error should be dismissed; that the judgment not having been rendered in term time, it was not final, but merely an order for judgment, requiring another act of the Court to perfect it; that no judgment can be entered in vacation, the statute requiring the minutes or re-

a 1 Chitty's P. 44, 22. Croke Charles 373. 1 Com. Dig. 236. 2 Bacon's Ab. 379, 380. Toller'sEx'rs 273. Acts of 1825, p. 8.
b Laws of Ala. 334. 7 T. R. 178. 1 T. R. 439. 1 Chit. Pl. 13. Toller's Ex'rs. 438. Minor's Ala. R. 206.
c 5 Com. Dig. 200.
d 1. Stewart's R. 231.

cords of the Court to be read every morning, and signed on the last day of the term by the presiding Judge. *a* The order should have stood over till the next term, and then a judgment on it could have been rendered by the Court, such as the statute requires.

By JUDGE WHITE. In the opinion of the Judge who presided in the Court below, and which is filed of record, the case is assimilated to one, where, in a note given to an administrator, he becomes security for himself. In England, when a creditor appoints his debtor executor, when his own creditors will not be injured, and there is nothing expressed in the will to the contrary, it will operate as an extinguishment of the debt, on the principle that from such an act of the testator, it may reasonably be infered, that such was his intention. In that case, *the party himself* acting in his *own right,* having destroyed the remedy, it is forever gone. But it is otherwise where administration of the estate is committed by *the act of the law* to a debtor. There the remedy is only suspended for a time, by the legal operation of the grant. Thus, if the obligor of a bond administer to the obligee, and die; a creditor of the obligee, having obtained administration *de bonis non,* may maintain an action for such debt against the executor of the obligor. So, if the executrix of an obligee marry the obligor, such marriage is no release of the debt, and the husband may pay it to the wife in the character of executrix; and if he do not, the remedy is suspended only, by the legal effect of the coverture; and on her death, the administrator *de bonis non* of the testator will be equally entitled to that debt, as to any other outstanding. *b* In the first volume of Chitty's Pleadings, it is said, *c* that if an executrix marry a debtor to her testator, the right of action is only suspended during the coverture; and if she survives, she may, in the character of executrix, sue the representatives of the husband, as the wife surviving is entitled to all actions in *auter droit.* From these principles it results, that if the bond on which this action is founded must be esteemed assets in the hands of the administratrix, or in other words, if she held it in *auter droit,* then her marrying one of the obligors would only suspend the remedy, but not destroy the right. In the book last cited *d* it is expressly laid down, that an executor may *sue as such,* upon a contract made with him in that character, as for goods sold by him as executor, and

in other cases where the sum to be recovered would be as-sets. Other authorities might be adduced to the same points, not only that in such cases he may sue as executor, but that the price of goods sold by him, in the character of executor, are assets; and if this will hold in England, it is more especially true in this State, where executors and administrators are not only permitted, but required to sell the perishable estates of decedents upon credit. Bonds and notes therefore taken at such sales, would be held by them, not in their own right, but as assets, in the right of others. And hence upon their death, resignation or removal, such notes or bonds would pass to those entrusted with the further administration, as part of the estate unadministered. It follows as a fair deduction from what has been said, that in the present action, one of the obligees, who was administrator, having married an obligor to the bond sued on, which bond she held as assets, the remedy was merely suspended, and not destroyed as if it had been held in her own right, for her own benefit. And this suspension of the right to sue would have continued during coverture, but for her resignation and the appointment of another to finish the administration. When this was done, this disability was removed, the right of action restored, and as we conceive properly asserted and fairly sustainable.

But it is said the judgment is of a character, that the writ of error cannot be prosecuted; and should be dismissed. We are of a different opinion. The record shews that by agreement, the Judge took the papers, decided the case in vacation, and having returned them to the clerk, a reference was had to his determination, and a judgment was entered, not exactly in form, but as we conceive, sufficiently so to be reversed, if erroneous; and we believe it was erroneous.

The judgment must be reversed, and the cause remanded.